PEOPLE *v.* DRIESSEN.

1. CRIMINAL· LAW — STATUTES—WATER — UNLAWFUL TAKING—IN-DICTMENT AND INFORMATION—MUNICIPAL CORPORATIONS.

An information charging that the respondent did "unlawfully hinder and interfere with the proper action and just registration of a certain water meter," etc., stating the charge in the language of the statute (3 Comp. Laws, §§ 11603-11605), sufficiently advised the respondent of the exact nature of the offense and imported wilful and fraudulent interference.

2. SAME—AMENDMENT OF INFORMATION—APPEAL AND ERROR.

But an amendment at the trial adding to the information the words "wilfully and fraudulently," did not prejudice the rights of the respondent and charged no different offense.

3. SAME—REPEAL OF STATUTE—CONSTRUCTION.

Under the saving clause of Act No. 277, Pub. Acts 1911 (5 How. Stat. [2d Ed.] § 14626 *et seq.*), which repealed 3 Comp. Laws, §§ 11603-11605, but created a similar offense, providing also that all proceedings pending and all rights and liabilities existing, acquired or incurred should be saved, an offense committed before the law was repealed might be prosecuted; "rights" included the right of the public to institute a prosecution and "liabilities" covered the respondent's liability to be prosecuted.

Exceptions before sentence from Kalamazoo; Knappen, J. Submitted November 10, 1913. (Docket No. 168.) Decided December 20, 1913.

John Driessen was convicted of unlawfully interfering with a water meter. Affirmed.

*Milo O. Bennett,* Prosecuting Attorney, for the people.

*Jackson & Fitzgerald,* for respondent.

BROOKE, J. Respondent was tried before a municipal justice under a warrant which in the first count charged that he—

"Did unlawfully hinder and interfere with the proper action and just registration of a certain water meter situated in a certain factory building, known as the plant of the Standard Paper Company, at the city of Kalamazoo, county of Kalamazoo, aforesaid; said meter belonging to the city of Kalamazoo, a municipality owning and operating a plant for producing; transmitting, and conducting water, without the written consent of said city of Kalamazoo or its duly authorized agent or officer," etc.

The second count charged respondent with having wilfully and fraudulently used and caused to be used some 20,000,000 gallons of water, without the same being metered, by means of a by-pass which carried it around the meter. The third count charged the same offense in different phraseology. Respondent was found guilty under the first count, and judgment was rendered thereon by the justice. From this judgment respondent appealed to the circuit court, where a second verdict of "guilty" was rendered. He has now removed his case to this court for review upon exceptions before sentence.

In the circuit court before the jury were impaneled, respondent moved to quash the first count in the complaint and warrant for the following reasons:

"(1) The first count charges no offense known to the laws of the State of Michigan.

"(2) The first count charges no wilfulness or fraud upon the part of the respondent.

"(3) The first count does not allege or set forth in what way the respondent hindered or interfered with the just and true registration of the water meter mentioned therein.

"(4) The first count is indefinite and uncertain and charges only a conclusion of the pleader.

"(5) The first count does not set forth facts by which the offense can be identified.

"(6) The first count does not acquaint the respondent with the facts which he may be required to meet upon trial.

"(7) The first count does not show that the water meter mentioned therein was in any manner used by the city of Kalamazoo, or that the water mains of the city of Kalamazoo were in any way connected with said water meter.

"(8) For the reason that the first count as charged in the complaint and warrant is not sufficiently definite to inure to the subsequent protection of the respondent upon a conviction or acquittal, should he be again questioned on the same grounds."

This motion was denied, whereupon counsel for the people moved for permission to amend the first count by inserting after the word "unlawfully" the words "wilfully and fraudulently." This amendment was allowed over objection, and the trial proceeded. The prosecution was had under the provisions of sections 11603-11605, 3 Comp. Laws. That law was repealed by Act No. 277 of the Public Acts of 1911 (5 How. Stat. [2d Ed.] § 14626 *et seq.*). Section 4 of the latter act, after providing for the repeal of the earlier act, proceeds:

"But all proceedings pending and all rights and liabilities existing, acquired or incurred at the time this act takes effect are hereby saved, and such proceedings may be consummated under and according to the law in force at the time such proceedings were commenced."

Before considering the various assignments of error, it may be well to note the following facts. The city of Kalamazoo, having discovered the alleged wrongful diversion of its water by respondent for the benefit of the Standard Paper Company, brought suit against that company in the circuit court. Upon the trial of that case respondent was sworn as a witness. His testimony, there given, was read without objection upon his own trial and was in part as follows:

"*Q.* I show you a diagram here.

"*A.* Yes, sir.

"*Q.* And ask you whether it is a fair and correct representation of the by-pass around the meter.

"*A.* It looks like it.

"*Q.* Now this represents the 2½-inch line that went through the meter?

"*A.* Yes, sir.

"*Q.* This represents the by-pass going around the meter?

"*A.* Yes, sir.

"*Q.* On that by-pass was a valve?

"*A.* Yes, sir.

"*Q.* The valve was just about as indicated there?

"*A.* It looks like it.

"*Q.* We will make that valve 'A.'

"*A.* About the other one?

"*Q.* I will get to that. Answer my questions. That valve controls the flow of water through the by-pass, doesn't it?

"*A.* Yes, sir.

"*Q.* Now here was another valve here?

"*A.* Yes, sir.

"*Q.* This is 'B.' That valve was to close the water from going through the meter, this one here?

"*A.* Yes, sir.

"*Q.* Now that valve 'A' on the by-pass was worked by a hand wheel?

"*A.* It certainly was; yes, sir.

"*Q.* And that hand wheel was held there by a nut?

"*A.* Yes, sir.

"*Q.* And that valve was sealed?

"*A.* I think it was.

"*Q.* Do you remember when it was sealed?

"*A.* When it was put on, I presume.

"*Q.* You have seen the seal on it?

"*A.* Yes, sir.

"*Q.* When was that seal taken off?

"*A.* It was never taken off.

"*Q.* You swear it was not?

"*A.* I swear it was not.

"*Q.* Was there not a lock and chain put on?

"*A.* Yes, sir.

"*Q.* This seal was taken off and a lock and chain put on, was it not?

"*A.* I can't recollect whether the seal was missing or not when they put the chain on.

"*Q.* First they had a seal and then had a lock and chain?

"*A.* Yes, sir.

"*Q.* Now explain to the jury how you would remove that hand wheel from there without breaking the seal—

"*Mr. Fitzgerald:* I object to any testimony of this nature concerning the acts of the respondent in this case showing him concerned with this by-pass or any portion of it unless it is shown first that the respondent has parted with his constitutional right not to testify in any way to incriminate himself.

"*The Court:* The objection is overruled.

"*Mr. Fitzgerald:* An exception.

"*Mr. Bennett:* (Reading continued)—and let the water run through the by-pass.

"*A.* I testified to that question; however, I will answer it again; I did that once.

"*Q.* When was that? State how you did it?

"*A.* I did state how.

"*Q.* You may answer how you?

"*A.* I opened it with a wrench..

"*Q.* How did you take the hand wheel off? The whole process?

"*A.* By taking the wheel off, of course.

"*Q.* You could take the nut off of the hand wheel?

"*A.* Yes, sir.

"*Q.* Didn't you?

"*A.* Yes, sir.

"*Q.* I will indicate the seal by 'D;' in other words, this represents the seal on the by-pass there.

"*A.* Yes, sir.

"*Q.* Now you would simply unscrew that nut from the hand wheel?

"*A.* Yes, sir.

"*Q.* And leave the hand wheel off?

"*A.* Yes, sir.

"*Q.* Without breaking the seal?

"*A.* Yes, sir.

"*Q.* Then take the wrench and turn the water around the by-pass?

"*A.* Yes, sir.

"*Q.* Then slip the hand wheel back?

"*A.* Yes, sir.

"*Q.* And put the nut back on?

"*A.* Yes, sir.

"*Q.* And the water would be going around the by-pass?

"*A.* Yes, sir.

"*Q.* And the hand wheel would still be sealed?

"*A.* Yes, sir.

"*Q.* And it would not be registered by the meter?

"*A.* It would not to any extent; this valve would also be open and some of the water would go through there.

"*Q.* If it were closed none of the water would be registered by the meter, if it were closed?

"*A.* Yes, sir.

"*Q.* You stated you did that once, did you?

"*A.* Yes, sir.

"*Q.* When did you open that?

"*A.* Some 2½ or 3 years ago.

"*Q.* Why did you do it?

"*A.* I did it; I don't know why I did it; it was the mistake of my life to do so and I regret it.

"*Q.* Then you did steal water from the city of Kalamazoo?

"*A.* You may call it that if you can accuse me and prove I stole water. I will finally give in that I stole city water for half an hour."

It is first contended by respondent that the first count (without the amendment) is insufficient and defective because it is uncertain and does not set forth facts by which the offense could be identified, nor in such manner as to enable respondent to prepare for his defense. We are disposed to the view that this claim is hypercritical. The object of the complaint and warrant is to advise respondent of the exact nature of the offense charged. How was respondent misled or left in doubt after examination of the count in question? He was charged with interfering with and hindering "the proper action and just registration of a certain water meter." This is one of the offenses described in the statute, and, when

it is alleged that respondent did this act "unlawfully," the elements of chance, accident, and mistake are eliminated, and wilfulness and fraud may be said to be imported. The cases of *People* v. *Enders*, 20 Mich. 233, and *People* v. *Olmstead*, 30 Mich. 431, relied upon by respondent, have been examined, but in our opinion they are not controlling. The offense is charged practically in the language of the statute.

Having concluded that the first count was sufficient without amendment, it is unnecessary to consider the propriety of allowing the amendment. Respondent was not harmed by the allowance of the amendment. No different offense was charged. If the insertion of the words of the amendment had any effect, that effect was simply to place a greater burden upon the prosecution.

It is next urged by respondent that the saving clause in Act No. 277, Public Acts of 1911 (5 How. Stat. [2d Ed.] § 14626), does not permit the institution of a prosecution under the old law after the new law went into effect for an offense committed under the old law. This contention, if sound, would lead to the result that one who committed an offense under the old law which was not discovered until after the new law went into effect could not be prosecuted at all, although the new law was simply a re-enactment of the old law, with somewhat more stringent elaborations. The legislature certainly never meant by its action to accomplish such an anomaly, nor do we believe it did so. It may be admitted that the saving clause is not happily framed to express the undoubted legislative intent, but we are of opinion that it is sufficient.

"All rights and liabilities existing, acquired, or incurred at the time this act takes effect are hereby saved."

Among those "rights" is the right of the people to prosecute, and among the "liabilities" is the liability

of respondent to be prosecuted. The balance of the saving clause simply takes care of such proceedings as may have been already instituted. Where the legislative intent is plain, it must control. *Township of Leoni* v. *Taylor*, 20 Mich. 148.

The claim of respondent that, having been acquitted by the jury in the lower court under the second and third counts, the prosecution should not have been permitted to sustain the charge under the first count with the same evidence that served to prove the allegations contained in the second and third counts required no discussion. That evidence may have been insufficient to show respondent's guilt under the last two counts, while ample for that purpose under the first count.

Finally it is urged by respondent that there was not sufficient evidence on the part of the people that his offense was committed "without the written consent" of the city of Kalamazoo or its duly authorized agent or officer. In the absence of all evidence to the contrary, we think that offered by the people sufficient. The question was submitted to the jury, and they, by their verdict, determined that no such consent was given. Indeed, none such is claimed to have been given.

Respondent, under oath, has frankly admitted the perpetration of acts, which under the provisions of the statute constitute the offense charged. Under such circumstances it would seem that technical errors might well be disregarded upon the theory that respondent could not be prejudiced thereby. We have, however, examined all of respondent's assignments of error and have concluded that his conviction should be affirmed.

The lower court is directed to proceed to judgment.

STEERE, C. J., and MOORE, MCALVAY, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.